**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIS KYLE, JR.,** | : | |
| Petitioner | : | CIVIL ACTION NO. 3:06-0948 |
| v. | : | (VANASKIE, D.J.) |
| | | (MANNION, M.J.) |
| **CAMERON LINDSAY,** | : | |
| Respondent | : | |

**MEMORANDUM AND ORDER**

The <u>pro se</u> relator, a D.C. Code violator in the custody of the Federal Bureau of Prisons ("BOP") at the U.S. Penitentiary Canaan at Waymart, Pennsylvania, filed his petition under 28 U.S.C. § 2241 on May 8, 2006. He raises three claims relating to parole. First, he contends he was subjected to double jeopardy in violation of the Fifth Amendment to the U.S. Constitution when the U.S. Parole Commission ("Commission") summoned him to a parole revocation hearing after the D.C. Board of Parole ("Board") had already purportedly punished him at a parole revocation hearing.[1] Second, he contends he was denied due process of law in violation of the Fifth Amendment when the Board held his parole revocation hearing twenty-three

---

[1] In 1998, the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745 (effective August 5, 1998), transferred the Board's "jurisdiction and authority" to the Commission. The Commission was authorized to exercise the Board's powers under D.C. law and was given "exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia with respect to felons." Id. § 11231(c); D.C. Code § 24-131(a)(1), (c) (2001) (formerly § 24-1231(a)(1), (c)). Pursuant to its authority, the Commission revised the D.C. parole regulations in 1998 and 2000. 28 C.F.R. § 2.80 (1999 & 2001).

months after his arrest while on parole. Finally, he contends he was subjected to an ex post facto violation of Article One of the U.S. Constitution when his reparole eligibility was calculated under the Commission's reparole guidelines instead of the Board's reparole guidelines.² (Doc. No. 1.)

---

²The facts of the case have been taken from the response and its supporting exhibits, which the relator does not controvert in his traverse ( see 28 U.S.C. § 2248 , "The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."):  On January 11, 1979, the relator was sentenced by the District of Columbia Superior Court to an aggregate term of imprisonment of 47 years for armed robbery, assault with a dangerous weapon, simple assault, and destruction of property. On May 2, 1994, the Board released the relator to parole, which was to last until May 10, 2025. However, the relator violated parole: on May 23, 1996, the relator was arrested in Fairfax County, Virginia, and charged with assault; on July 25, 1996, the relator was arrested by the Metropolitan Police Department in the District of Columbia and charged with assault with intent to kill. A *nolle prosequi* was entered on the assault charge. The relator was convicted of assault with intent to kill on April 18, 1997, and sentenced to a term of imprisonment of three-to-nine years, with execution of sentence suspended for 18 months to nine years, and three years' probation.
    As a result of the parole-violative conduct, the Board lodged a warrant as a detainer against him on August 8, 1996. The Board ordered that the detainer be maintained on May 28, 1997. On January 24, 1998, upon the completion of the relator's prison sentence, the warrant was executed and the relator was arrested. The Board charged the relator with three violations: use of a firearm and two failures to obey laws. It held a revocation hearing on June 25, 1998, at which the relator admitted the violations. On August 20, 1998, the Board issued its decision to revoke the relator's parole. It ordered a rehearing by April 28, 1999. At the hearing, the Board noted that the relator faced a pending charge of assault with intent to kill.
    The relator was transferred from the Board's jurisdiction to the Commission's jurisdiction. The Commission held a parole rehearing for the relator in 2000. Based on the severity of the relator's violative conduct, assault with intent to kill, the Commission denied parole and ordered a rehearing in 15 years, in November 2015. It also ordered a review hearing in 24 months, which was conducted on March 18, 2003. At the review hearing, the Commission reviewed the relator's institutional conduct since the rehearing.

On June 5, 2006, the respondent warden of the penitentiary responded to the petition, with the relator's pertinent record. He contends the relator's petition is meritless. First, he argues that double jeopardy does not apply to the denial or revocation of parole. Second, he argues the relator incorrectly dates his purportedly overdue hearing from his arrest on a criminal warrant instead of from the execution of the Board's parole violation warrant, which was only five months prior to the hearing. Finally, he argues that the Commission's revised reparole guidelines are not subject to the ex post facto clause. (Doc. No. 4.)

On June 19, 2006, the relator traversed the response and submitted exhibits in an effort to rebut the respondent's arguments. (Doc. Nos. 5 & 6.)

It is the respondent's third argument that leads to this order. The respondent bases his argument that the Commission's revised reparole guidelines do not violate the ex post facto clause on Allston v. Gaines, 158 F.Supp.2d 76, 83 (D.D.C. 2001). In Allston, the U.S. District Court for the District of Columbia held, in part, that the Commission's parole revocation guidelines applicable to D.C. Code offenders are not laws subject to the ex post facto clause. 158 F.Supp.2d at 84. In arriving at its conclusion, the court noted that "[m]ost circuits that have considered the question agree with this proposition." Id. at 81-82 & n.4 (collecting cases). It cited with approval the

---

It ordered no change in its prior order. The Commission held another review hearing on March 22, 2005, at which it again ordered no change in the rehearing set for 2015.

Seventh Circuit in Inglese v. United States Parole Comm'n, 768 F.2d 932, 936-37 (1985):

> The power to exercise discretion indicates that the guidelines are merely guides, and not laws: guides may be discarded where circumstances require; laws may not. . . . The key to the finding that guidelines are guides merely, and not laws, is that the Parole Commission has a congressional mandate . . . to exercise discretion.

Id. at 82.[3] It also cited the Third Circuit's decision in United States ex rel. Forman v. McCall, 776 F.2d 1156, 1158 (3d Cir. 1985), in which our Circuit held that the Commission's parole guidelines applicable to U.S. Code offenders could "constitute 'laws' within the meaning of the ex post facto clause" if they were "applied without substantial flexibility." Id. The court, finding that the D.C. Circuit "has effectively endorsed a test similar to that employed by the Third Circuit," used the Third Circuit's statistical-analysis approach to determining whether the guidelines were laws and determined that the guidelines are not laws subject to ex post facto review. Id. at 82-83 (citing Blair-Bey v. Quick, 151 F.3d 1036, 1049 n.12 (D.C. Cir. 1998); Warren v. United States Parole Comm'n, 659 F.2d 183, 197 n.57 (D.C. Cir. 1981)).

---

[3] In Inglese, the Seventh Circuit also recognized that the majority of circuits that have addressed the issue have held that the Commission's parole guidelines are not laws subject to the ex post facto clause. 768 F.2d at 936-936 (collecting cases). In addition, the Circuit cited Portley v. Grossman, 444 U.S. 1311, 1312 (Rehnquist, Circuit Justice 1980), which it described as an "in chambers opinion of Justice Rehnquist denying a stay of execution of the Court of Appeals's judgment denying a habeas corpus writ, pending review on certiorari in the Supreme Court, and stating that federal parole guidelines 'operate only to provide a framework for the Commission's exercise of its statutory discretion.'" Id.

4

On the basis of Allston, the respondent raises two arguments: "First, Allston holds, based on the statistical evidence, that the reparole guidelines do not substantially circumscribe the Commission's discretion. Second, Kyle has not, and indeed cannot, establish that he has been materially disadvantaged by the use of these guidelines." (Doc. No. 4 at 9 (citing Blair-Bey, 159 F.3d at 592).)

The court, however, has some concerns with the respondent's argument. The respondent states: "In Allston, the court decided the precise issue presented by Kyle: whether the Commission's use of the reparole guidelines found at 28 C.F.R. § 2.81(a) (referencing § 2.21) violated the Ex Post Facto Clause." (Doc. No. 4 at 7 (internal citation omitted).) However, this statement does not appear to be entirely accurate. The district court in Allston was confronted with a challenge to the Commission's parole revocation guidelines, not the reparole guidelines.

The distinction might be dismissed as harmless, if courts have found certain of the Commission's guidelines not subject to the ex post facto clause, then certainly other of the Commission's guidelines, which are within the same regulatory regime, similarly ought to be outside the clause's scope. But the D.C. Circuit's recent decision in Fletcher v. Reilly, 433 F.3d 867 (2006), raises doubts about the analysis, and case law underlying the district court's decision in Allston, and, consequently, the respondent's argument.

In Fletcher, a case whose facts are similar to the relator's, the court of

5

appeals considered an ex post facto challenge by a D.C. Code offender to the Commission's use of reparole guidelines applicable to U.S. Code offenders instead of the Board's reparole guidelines applicable to D.C. Code offenders.[4] 433 F.3d at 869. The circuit court reversed the district court, which had dismissed the petition on the grounds that, "'[a]lthough the question is unsettled, the weight of authority holds that parole guidelines and rules such as those at issue in this case, which simply provide guides for the exercise of discretion, do not constitute 'laws' subject to an ex post facto analysis.'"[5] Id. at 874 (quoting Fletcher v. Reilly, Civ. No. 01-2058, 2003 U.S. Dist. LEXIS 26412, at * 9 (D.D.C. 2003) (not reported)).

---

[4] In a detailed review of the regulatory framework underlying the case, the circuit court noted that when the Commission took over the Board's duties, it adopted parole guidelines that "mirrored" the Board's parole guidelines. Id. "The Commission, however, did not adopt the Board's regulations covering decisions to grant reparole to D.C. Code offenders." Id. (emphasis in original); see id. at 870-72 (discussing the Board's and the Commission's parole and reparole regimes). In fact, the Commission's regulations specifically apply the federal reparole guidelines to D.C. Code offenders who are eligible for parole on the original sentences from which they had been released to parole. Id. at 871-72; see 28 C.F.R. § 2.81(a) ("If the prisoner is not serving a new, parolable D.C. Code sentence, the Commission's decision to grant or deny reparole on the parole violation term shall be made by reference to the reparole guidelines at § 2.21.").

The circuit court found that the relator had established a prima facie case of an ex post facto violation because "the federal reparole regulations applied in Fletcher's case are substantially different from the D.C. Board's regulations that were repealed in August 2000," especially with respect to the consideration given to post-incarceration behavior. Id. at 877-79.

[5] Thus, if Allston stood for the proposition for which the respondent advances it, it would be overruled by Fletcher.

6

The court found that the district court had incorrectly approached the issue:

> In dismissing Fletcher's habeas petition, the District Court assumed that parole/reparole regulations are not "laws" for ex post facto purposes. We squarely rejected this position. Fletcher v. District of Columbia, 391 F.3d 250, 251 (D.C.Cir. 2004) ("Fletcher II"), granting reh'g and vacating in part, 370 F.3d 1223 ("Fletcher I"). Fletcher II makes it clear that, under Garner v. Jones, 529 U.S. 244, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000), the critical question in ex post facto challenges to retroactively applied parole/reparole regulations is whether, as a practical matter, the retroactive application creates a significant risk of prolonging an inmate's incarceration.

Id. at 869-70. The court stated that "the District Court was also under the misconception that since the D.C. Board exercised discretion in applying the former D.C. parole/reparole regulations and the Commission exercises like discretion in applying the federal parole/reparole regulations, there could be no ex post facto violation." Id. at 876.

According to the circuit court, a parole board's discretionary power does not shield it from an ex post facto challenge. It stated that "Garner 'foreclosed [a] categorical distinction between a measure with the force of law and guidelines . . . from which [a parole board] may depart in its discretion.' [T]he existence of discretion is not dispositive." Id. at 876 (quoting Fletcher II, 391 F.3d at 251) (first two bracketed additions in original); see Fletcher II, 391 F.3d at 251 ("Rather, the question is one of practical effect."). The circuit then remanded the case to the district court to conduct

> a searching comparison of the old and new reparole regimes in order to determine whether the U.S. Parole Commission's

7

> application of the federal reparole regulations at Fletcher's reparole hearing in 2000 created a significant risk that he will be subjected to a lengthier incarceration than he would have been if the Commission had adhered to the rules and practices of the D.C. Board.

Id. at 878-79.

As the D.C. Circuit made clear, it based its analysis and decision on the Supreme Court's decision in Garner. In Garner, the Court was confronted with a Georgia Parole Board rule that extended the time between parole reconsideration hearings. 529 U.S. at 247-48. It recognized that Georgia's Parole Board is vested with "broad discretion," id. at 252-53, but held that "[t]he presence of discretion does not displace the protections of the Ex Post Facto Clause," id. at 253.

The Court in Garner did not directly address the issue that concerns the court in the instant case: whether it is necessary or appropriate as a predicative matter to analyze a parole guideline's amenability to the ex post facto clause. Consequently, its statement concerning discretion is subject to differing interpretations. The D.C. Circuit has clearly come down against the predicative analysis. But the Seventh Circuit, in a case that did not treat parole guidelines, indicated that it does not read Garner to foreclose the predicative analysis. See United States v. Demaree, 459 F.3d 791, 795 (7th Cir. 2006) ("We conclude that the ex post facto clause should apply only to laws and regulations that bind rather than advise, a principle well established with reference to parole guidelines whose retroactive application is challenged

8

under the ex post facto clause.") (citing Garner v. Jones, 529 U.S. at 256; California Dep't of Corrs. v. Morales, 514 U.S. 499, 511-13 (1995); Glascoe v. Bezy, 421 F.3d 543, 547 (7th Cir. 2005); Prater v. United States Parole Comm'n, 802 F.2d 948, 953-54 (7th Cir. 1986) (en banc); Wallace v. Christensen, 802 F.2d 1539, 1553-54 (9th Cir. 1986); Dufresne v. Baer, 744 F.2d 1543, 1549-50 (11th Cir. 1984); Warren v. United States Parole Comm'n, 659 F.2d 183, 195-96 (D.C. Cir. 1981); Shepard v. Taylor, 556 F.2d 648, 654 (2d Cir. 1977).[6] And three district courts, in cases concerning challenges to the Commission's parole regime since Garner came down, have found that the parole regulations are not laws subject to the ex post facto clause. See Wells v. Reilly, Civ. No. 05-5583, 2006 WL 3518586, at *3 (D.N.J. Dec. 1, 2006) (slip op.) (finding that the relator "has failed to establish that the challenged guidelines are 'laws' within the meaning of the Ex Post Facto

---

[6] The cases cited by the Seventh Circuit in Demaree may be inapposite to the proposition for which the court advances them. As already noted, Garner is arguably unclear. The Supreme Court in Morales never stated that parole guidelines are not subject to the ex post facto clause; indeed, the Court analyzed the challenged parole procedures and, in the passage cited in Demaree, found that the relator had not met the burden in a merits review. In Glascoe, in an ex post facto parole case brought by a D.C. Code offender, the Seventh Circuit expressly avoided deciding whether the D.C. parole guidelines are laws subject to the ex post facto clause because it could deny the petition on the merits. 421 F.3d at 548 ("The answer to this question [of whether a merits review would be favorable to the relator] in Glascoe's case makes it unnecessary for us to evaluate the government's argument that the parole procedures under attack in this case are simply discretionary guidelines, unlike statutes or the 'rules' addressed in Garner, and not within the ambit of the Ex Post Facto Clause."). The other cases cited in Demaree came down long before Garner.

9

Clause") (citing Lawary v. United States Parole Comm'n, 2000 WL 1277306 (S.D.N.Y. 2000)); Reynolds v. Williamson, 2005 WL 3050154, at *5 (M.D. Pa. 2005) (not published) ("[T]he Commission's guidelines do not constitute laws for ex post facto purposes.  Parole guidelines provide guidance as to the exercise of agency discretion as opposed to prescriptive laws created by legislative branches of government that impose restrictions on agency authority.") (citing Sheary v. United States Parole Comm'n, 822 F.2d 556, 558 (5th Cir. 1987); Prater, 802 F.2d at 954; DiNapoli v. Northeast Reg'l Parole Comm'n, 764 F.2d 143, 147 (2d Cir.), cert. denied, 474 U.S. 1020 (1985)); Cherry v. Garraghty, 2003 WL 23332751, at *4 (E.D. Va. 2003) (not published) ("Courts have rejected challenges to the Commission's District of Columbia guidelines on ex post facto grounds," including because the guidelines are not laws for ex post facto purposes.) (citing Allston, 158 F.Supp.2d. 76; Cruz v. Clark, 684 F.Supp. 1335, 1339 (E.D. Va. 1988)).  But the vast majority of cases, including cases in which the court states that parole guidelines are not subject to ex post facto challenges such as Wells, Reynolds, and Cruz, nonetheless undertake a substantive analysis.[7]  Cf. Bryant v. Williamson, Civ. No. 06-2082, 2007 WL 210792, at *3 (M.D. Pa. Jan.

---

[7] The court extensively searched Westlaw for cases that cite the Board's or the Commission's parole guidelines with respect to D.C. offenders, as well as to cases that cite Garner or Fletcher with respect to the issues here. The list is too long to reproduce.  Very few cases analyzed whether the guidelines are amenable to an ex post facto challenge, but nearly every case included a merits analysis.

10

25, 2007) (slip op.) (stating that the Commission's parole guidelines may not be laws for ex post facto purposes, but not analyzing issue because of insufficient statistical record and proceeding to merits analysis); Brown v. Williamson, Civ. No. 06-0851, 2006 WL 1896166, at *1 & n.3 (M.D. Pa. July 7, 2006) (slip op.) (stating that "it appears that an Ex Post Facto claimant must satisfy a prerequisite before the Court will" conduct a merits review, but avoiding the analysis and proceeding to the merits).

Another consideration is the Third Circuit's much-cited opinion in United States ex rel. Forman v. McCall, 709 F.2d 852, 857 (3d Cir. 1983), rev'd, 776 F.2d 1156 (3d Cir. 1985), cert. denied, 476 U.S. 1119 (1986).[8] Accord Crowell v. United States Parole Comm'n, 724 F.2d 1406, 1408 (3d Cir. 1984). In Forman, the Third Circuit stated that administrative regulations, such as parole guidelines, may be subject to the ex post facto clause because "it is a fundamental principle of administrative law that '[v]alidly promulgated regulations have the force and effect of law.'" 709 F.2d at 857 (quoting Griffin v. Harris, 571 F.2d 767, 772 (3d Cir. 1978)). The court of appeals held that the Commission's parole guidelines applicable to U.S. Code offenders could "constitute 'laws' within the meaning of the ex post facto clause" if they were "applied without substantial flexibility."[9] Id. at 862. It opined that the federal

---

[8]Courts variously cite to either the 1983 case, known as Forman I, or the 1985 case, known as Forman II.

[9]"This position has since been rejected by every other circuit that has addressed the issue. However, it remains the law of this circuit until overruled

11

guidelines allowed for "some exercise of discretion," but that their framework "constricted" that discretion." Id. The court stated:

> Unbounded discretion probably does not exist in the Commission's decisionmaking; the guidelines provide perimeters that may be overstepped only upon a showing of good cause, and changes in the guidelines appear to shape the exercise of that discretion.
>
> . . . .
>
> "[T]the guidelines are designed to be not mere hortatory 'clarifications' of policy, but rules which are to be followed except for 'substantial reason' to the contrary. The freedom of the Commission to grant parole prior to the customary release date is constrained, and the 'situation' of prisoners otherwise eligible for parole is 'altered to their disadvantage.'"

Id. at 861 (quoting Geraghty v. United States Parole Comm'n, 579 F.2d 238, 267 (3d Cir. 1978), vacated and remanded, 445 U.S. 388 (1980)).

The circuit court remanded the case to the district court to conduct a statistical analysis. Forman, 709 F.2d at 862-63. The district court was to determine whether the federal guidelines "were merely 'a channel for discretion,' or 'an unyielding conduit' which constitutes a 'law' for ex post facto purposes." Forman, 776 F.2d at 1160 (quoting Forman, 709 F.2d at 862). The district court held that the federal guidelines were laws subject to the ex post facto clause because they "are woodenly applied, thus constituting an 'unyielding conduit' void of substantial flexibility." Id. at 1161 (citing Op. of the Dist. Ct. at 14) (internal citations omitted). The circuit court then reversed the

---

by the in banc court." Forman II, 776 F.2d at 1159.

12

district court, finding that the lower court had analyzed too narrow a body of statistics and that, properly analyzed, the statistics showed that the Commission had substantial flexibility. Id. at 1162-63.

It is notable that Forman, like virtually every case that has addressed the issue of whether parole guidelines are laws, bases its analysis on the Commission's discretion. Yet the Supreme Court in Garner explicitly stated that discretion does not remove parole guidelines from the scope of the ex post facto clause. Without qualification, the Court's precise meaning is perhaps arguable. But this court finds that the proper reading of Garner indicates that the predicative analysis advanced in Forman is no longer appropriate. In support of its reading of Garner, the court is highly influenced by the D.C. Circuit in Fletcher. In any case, regardless of whether or not the court finds that Forman is overruled to the extent it established a predicative test, the court finds that the better practice is to analysis the relator's claim under the ex post facto framework. This is in accord with the vast majority of courts, which conduct a merits review irrespective of their decisions concerning whether parole guidelines are laws.

The court accordingly directs the parties to submit briefs and evidence on a merits review of the relator's ex post facto claim. As noted above, the respondent stated in one sentence that the relator cannot show that he is materially disadvantaged by the use of the Commission's federal reparole guidelines instead of the D.C. reparole guidelines. However, this is not based

13

on any actual analysis of the relator's particular circumstances and is insufficient under the standard for evaluating an ex post facto challenge.

It is well established that a law violates the ex post facto clause if it "retroactively . . . increase[s] the punishment for criminal acts." Collins v. Youngblood, 497 U.S. 37, 43 (1990) (citing Beazell v. Ohio, 269 U.S. 167, 169-70 (1925)). A retroactively applied parole regulation unconstitutionally increases criminal punishment if it disadvantages the prisoner by "creat[ing] a significant risk of prolonging [the prisoner's] incarceration. Garner, 529 U.S. at 250-51, 255 (citing Morales, 514 U.S. at 509). The prisoner "must show that as applied to his own sentence the law created a significant risk of increasing his punishment."[10] Id. at 255 (emphasis added).Garner established two means by which the prisoner can make his showing. First, he can facially compare the two regulations at issue to determine if the retroactively applied regulation, "by its own terms," poses a significant risk of increasing his punishment. Id. Second, "[w]hen the rule does not by its own terms show a significant risk, the respondent must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under

---

[10]The relator argued in his petition and traverse that the application of the Commission's reparole guidelines are more severe than the D.C. guidelines would have been. The court recognizes the weakness of the brief argument in respect of the relator's responsibility to make the showing of "a significant risk" of increased punishment," but finds it appropriate to require the respondent, as the party with better access to the necessary documents, to provide the material necessary to analyze the relator's claim.

14

the earlier rule." Id.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

(1).    the respondent shall have until Friday, June 15, 2007, to submit a supplemental response that solely, substantively analyzes whether or not the Commission's application of its reparole guidelines, instead of the Board's reparole guidelines, violated the ex post facto clause, in light of the discussion above;

(2).    the respondent's supplemental response shall contain such exhibits as the respondent deems necessary to support his response, including, inter alia:

    (A).    the Board's reparole guidelines in effect when the relator's parole was revoked;

    (B).    the Commission's reparole guidelines in effect at the relator's reparole hearing in 2000; and,

    ©.    any evaluations by the Board or the Commission of the relator's suitability for reparole; and,

(3).    the relator shall have until Friday, July 6, 2007, to traverse the supplemental response solely on the issue of whether or not the Commission's application of its reparole guidelines, instead of the Board's reparole guidelines, violated the ex post facto clause in light of the discussion above, including any exhibits not submitted

15

by the respondent that the relator deems necessary to support his traverse.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

Date: May 15, 2007
O:\shared\MEMORANDUMS\2006 MEMORANDUMS\06-0948.01.wpd